IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION – IN ADMIRALTY
Case No. 4:20-cv-00090-M

| | |
|---|---|
| ATLANTIC COAST MARINE GROUP, INC., <br><br> Petitioner, <br><br> v. <br><br> RICHARD S. HANNYE and PHOENICIAN YACHTS LTD., <br><br> Respondents. | **OPINION AND ORDER** |

This matter comes before the court on Respondent Richard S. Hannye's *pro se* motion to dismiss Petitioner Atlantic Coast Marine Group, Inc.'s petition to compel arbitration, filed June 30, 2020. [DE-10] For the reasons that follow, Hannye's motion is DENIED.

I. **Background**

In its petition, Petitioner alleges the following facts: Petitioner is a corporation organized under and principally conducting business within North Carolina, and is in the business of, *inter alia*, providing marine-salvage services off of the east coast of the country. [DE-3 ¶¶ 2–3] Hannye is a resident of Pennsylvania who is the sole member of Respondent Phoenician Yachts Ltd. ("Phoenician"), a Delaware corporation. [DE-3 ¶¶ 5, 12; DE-11-9 ¶ 11] Phoenician owns a Delaware-registered sailing vessel named the Phoenician (the "Vessel"). [DE-3 ¶¶ 8–10; DE-11-9 ¶ 8]

On or about January 5, 2020, Hannye contacted Petitioner for the purpose of hiring Petitioner to salvage the Vessel from a position of peril off of the coast of Virginia. [DE-15–17, 26] Petitioner sent Hannye a proposed salvage contract executed by Petitioner, the parties corresponded regarding the proposed

1

contract, and Hannye "represented to [Petitioner] that he had signed the Salvage Contract as presented to him and had emailed it to" Petitioner before salvage operations commenced. [DE-3 ¶¶ 18–25; DE-3-1] On January 7, 2020, "without having received the Salvage Contract bearing Respondent Hannye's signature[,]" Petitioner successfully salvaged the Vessel. [DE-3 ¶¶ 26–27]

On January 8, 2020, Petitioner advised Hannye that Petitioner had "still not recieved the signed copy of the contract[,]" and Hannye responded that he had sent back an executed contract on January 6, 2020. [DE- 3 ¶¶ 28–30] Petitioner "[t]hereafter . . . received" the proposed contract, which Hannye had signed on his own behalf, but only after making a number of edits thereto. [DE-3 ¶¶ 30–311 DE-3-2] Petitioner disputed Hannye's edits and sent Hannye a bill for over $40,000. Hannye has refused to pay Petitioner, instead offering to pay $10,000 in settlement. [DE-3 ¶¶ 33–36; *see* DE-11-4, DE-11-8] Petitioner also demanded that Hannye arbitrate the dispute pursuant to an arbitration provision contained within the disputed contract, but Hannye has refused to arbitrate. [DE-3 ¶ 38; *see* DE-11-5–6]

Petitioner has now filed a petition to compel arbitration pursuant to the disputed contract. [DE-3] Hannye has moved to dismiss the petition pursuant to Federal Rule of Civil Procedure[1] 12(b)(2) ("Rule 12(b)(2)") for lack of personal jurisdiction. [DE-10] Petitioner has responded, and no reply was filed. [DE-13] Hannye's motion is therefore ripe for adjudication.

---

[1] The Federal Rules of Civil Procedure generally apply in proceedings in admiralty. *See* Fed. R. Civ. P. 1, 81(a)(1), Supp. R. A; *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 197 n.2 (4th Cir. 2013) (noting "Congress' extension of the Federal Rules of Civil Procedure to admiralty cases in 1966"); *see also Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1292–93 (11th Cir. 2017) (discussing applicability of Federal Rules of Civil Procedure in admiralty claims). Proceedings concerning marine salvage are not an exception to the general rule. *See B.V. Bureau Wijsmuller v. United States*, 702 F.2d 333, 342 n.5 (2d Cir. 1983) (affirming denial of Federal Rule of Civil Procedure 59 motion in case concerning appeal of salvage award, noting: "With exceptions not here relevant, the Federal Rules of Civil Procedure apply to suits in admiralty.").

2

## II.     Legal standard

The Fourth Circuit has articulated the standard for adjudicating a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction as follows:

> Under Rule 12(b)(2), a defendant[2] must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge. And a Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter. . . .
>
> The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court. For example, when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge. When determining whether a plaintiff has made the requisite prima facie showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff. . . . And because defendants file Rule 12(b)(2) motions precisely because they believe that they lack any meaningful contacts with the forum State where the plaintiff has filed suit, the better course is for the district court to follow a procedure that allows it to dispose of the motion as a preliminary matter.
>
> . . .
>
> As with many pretrial motions, a court has broad discretion to determine the procedure that it will follow in resolving a Rule 12(b)(2) motion. If the court deems it necessary or appropriate, or if the parties so request, it may conduct a hearing and receive, or not, live testimony. It may also consider jurisdictional evidence in the form of depositions, interrogatory answers, admissions, or other appropriate forms. But we see no reason to impose on a district court the hard and fast rule that it must automatically assemble attorneys and witnesses when doing so would ultimately serve no meaningful purpose. Creating such needless inefficiency would undermine a principal purpose of the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding."

---

[2] The applicable law concerning personal jurisdiction is equally applicable where, as here, a party is petitioning the court to compel arbitration with another. *See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 151–53 (2d Cir. 2001) (conducting personal-jurisdiction analysis in affirming district-court judgment granting motion to compel arbitration). Within this opinion, references within the quoted material concerning plaintiffs are applicable to Petitioner, and the references concerning defendants are applicable to Hannye and Phoenician as respondents.

3

*Grayson v. Anderson*, 816 F.3d 262, 267–69 (4th Cir. 2016) (citations omitted). Neither party has requested a hearing on Hannye's Rule 12(b)(2) motion, and the court does not deem it necessary to conduct a hearing. The court will accordingly rule upon Hannye's motion based upon the parties' submissions.

### III. Analysis

#### a. Hannye

"The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 110 (1969). And the Fourth Circuit has said:

> It is axiomatic that, in order for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied.
>
>> First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and,
>>
>> [S]econd, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements.

*Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

Because this court sits within North Carolina, the court must look to North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, to determine whether *Nolan*'s first condition is satisfied. In 2018, the North Carolina Court of Appeals stated that "our long-arm statute was intended to make available to North Carolina courts the full jurisdictional powers permissible under due process" and that North Carolina's "statutory authorization for personal jurisdiction is coextensive with federal due process[,]" *Padron v. Bentley Marine Grp., LLC*, 262 N.C. App. 610, 615, 822 S.E.2d 494, 498 (2018) (quotation marks and citations omitted), and N.C. Gen. Stat. § 1-75.4 has not been amended since. Because N.C. Gen. Stat. § 1-75.4 "is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due

4

Process Clause . . . the dual jurisdictional requirements [set forth in *Nolan*] collapse into a single inquiry as to whether the defendant has such minimal contacts with the forum state that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Nolan*, 259 F.3d at 215 (internal quotation marks and citations omitted). The sole question before the court is therefore whether its "exercise of personal jurisdiction [over Hannye and Phoenician] comport[s] with Fourteenth Amendment due process requirements." *Id.*

Where, as here, it is not alleged that the defendant has continuous and systematic contacts with the forum state, a court may only exercise "specific" personal jurisdiction over the defendant. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003).

> In determining whether specific jurisdiction exists, we consider
>
> > (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state;
> >
> > (2) whether the plaintiffs' claims arise out of those activities directed at the state; and
> >
> > (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable."

*Id.* (citations omitted).

The first prong of this test "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (discussing the "minimum contacts" analysis first promulgated in *International Shoe Co. v. Washington et al.*, 326 U.S. 310 (1945)). The Supreme Court has held that "[i]t is sufficient for purposes of due process that the suit [i]s based on a contract which ha[s a] substantial connection with [the forum] State." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). And in recognition of the "inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications

5

across state lines[,]" the Court also held that "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (citations omitted).

Although Hannye argues in his Rule 12(b)(2) motion, *inter alia*, that the court lacks personal jurisdiction over "Defendants"[3] because "there was no activity or occurrence that took place in the Eastern District of North Carolina that is subject to the regulation of the State of North Carolina" [DE-11 at 1–3], it is undisputed that: (1) Petitioner and Hannye corresponded a number of times regarding an unsigned proposed marine-salvage contract [*see* DE-3 ¶¶ 24–25, DE-11-9 ¶¶ 22, 24]; (2) the proposed contract listed Petitioner's address in Beaufort, North Carolina [DE-11-2]; (3) the proposed contract both contemplated litigation in this court and expressly set forth that "[a]ll parties submit to the personal jurisdiction of the U.S. District Court for the Eastern District of North Carolina in connection with any litigation arising out of" Petitioner's contemplated salvage services [DE-11-2]; and (4) Hannye signed the proposed contract, albeit with edits—notably not including any edit to the proposed contract's personal-jurisdiction provision—and sent it back to Petitioner [DE-11-2; DE-3 ¶¶ 30–31; DE-11-9 ¶ 25]. Petitioner has therefore presented *prima facie* evidence that, in corresponding with Petitioner and signing the proposed contract,

---

[3] *See infra* Section III(b) (discussion Phoenician's failure to appear).

6

Hannye purposefully directed his commercial[4] efforts towards a resident[5] of North Carolina, *see Burger King*, in seeking to enter into a contract having a substantial connection with North Carolina, *see McGee*. That the disputed contract may ultimately be deemed unenforceable does not change the court's jurisdictional analysis. *See Du-Al Corp. v. Rudolph Beaver, Inc.*, 540 F.2d 1230, 1233 (4th Cir. 1976) (holding that the party opposing jurisdiction purposefully availed itself of the privilege of conducting business in Maryland based in part upon the fact that "Maryland was the site either of the final execution of the contract, *or of steps preliminary to its execution*" (emphasis added)). The court therefore concludes that Hannye purposefully availed himself of the privilege of conducting business in North Carolina, and that the first prong of *Carefirst*'s specific-personal-jurisdiction inquiry is therefore satisfied.

The second prong of the *Carefirst* inquiry "requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs*, 561 F.3d at 278–79. Hannye's contacts with North Carolina discussed above were plainly undertaken in connection with the disputed contract that forms the basis of Petitioner's petition to compel arbitration, and the court thus concludes that the second *Carefirst* prong is also satisfied.

Finally, the Fourth Circuit has said that:

> The third [*Carefirst*] prong -- that the exercise of personal jurisdiction be constitutionally reasonable -- permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has

---

[4] In signing a proposed contract contemplating the arbitration of a salvage dispute, Hannye transacted in maritime commerce. *See Jones v. Sea Tow Servs.*, 30 F.3d 360, 364 (2d Cir. 1994) ("The Federal Arbitration Act declares valid and enforceable written provisions for arbitration in any maritime transaction and in any contract evidencing a transaction involving commerce. The Act defines 'maritime transactions' as matters 'embraced within admiralty jurisdiction' and 'commerce' as including 'commerce among the several States or with foreign nations.' Ordinarily, agreements to arbitrate salvage disputes fall within these provisions." (quoting 9 U.S.C. §§ 1–2)).

[5] Although residence is more typically attributed to natural persons, the Florida "resident" upon whom the Court's personal-jurisdiction analysis focused in *Burger King* was a corporation, 471 U.S. at 479–80, meaning that Petitioner is a North Carolina "resident" within the meaning of that case.

purposefully availed itself of the privilege of doing business there. Such factors include:

> (1) the burden on the defendant of litigating in the forum;
>
> (2) the interest of the forum state in adjudicating the dispute;
>
> (3) the plaintiff's interest in obtaining convenient and effective relief;
>
> (4) the shared interest of the states in obtaining efficient resolution of disputes; and
>
> (5) the interests of the states in furthering substantive social policies.

*Id.* at 279. Only the first of these factors potentially weigh against the court's exercise of personal jurisdiction over Hannye. The court concludes that the burden on Hannye of litigating in this court is insufficient to preclude it from exercising personal jurisdiction over him, particularly since Hannye signed a proposed contract contemplating that the court would do just that. [DE-11-2] The court therefore concludes that its exercise of personal jurisdiction over Hannye is constitutionally reasonable, and that the third *Carefirst* prong is satisfied.

Because the court concludes that all three *Carefirst* prongs are satisfied, the court concludes that: (1) Petitioner has met its burden of making a *prima facie* showing that the court has specific personal jurisdiction over Hannye in connection with Petitioner's petition to compel arbitration; and (2) Hannye's Rule 12(b)(2) motion to dismiss the petition must accordingly be denied.

### b. *Phoenician*

Hannye moved to dismiss *pro se*, but also purported to move on Phoenician's behalf in so doing. [DE-10 ("*Defendants* hereby move for an order . . ." (emphasis added))] Although natural persons like Hannye may represent themselves in federal court, corporate entities like Phoenician may only appear through counsel licensed to practice within the relevant jurisdiction. *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may

8

Case 4:20-cv-00090-M   Document 16   Filed 09/14/20   Page 8 of 9

appear in the federal courts only through licensed counsel."). And while he may be an attorney licensed to practice law elsewhere [*see* DE-11-6 (letter from Hannye to Petitioner's counsel stating that Hannye is "[a]dmitted in PA, NJ and DC")], Hannye is not licensed to practice before this court. Because (1) Hannye is unable to represent Phoenician in this matter and (2) Phoenician (which was served with process [*see* DE-7]) has not filed anything through licensed counsel on the docket to date, Phoenician has effectively failed to respond to Petitioner's petition to compel arbitration within the timeframe specified by Federal Rule of Civil Procedure 12(a). Such failure means that Petitioner's allegation that Hannye acted on Phoenician's behalf in pursuing and signing the proposed salvage contract[6] is uncontested, and for the same reasons that the court concludes that it has personal jurisdiction over Hannye described above in Section III(a), the court concludes that it has personal jurisdiction over Phoenician at this stage. *See Grayson*, 816 F.3d at 267 ("Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge").

### IV. Conclusion

For the foregoing reasons, Hannye's motion to dismiss is DENIED.

SO ORDERED this the  14th  day of  September , 2020.

RICHARD E. MYERS II
UNITED STATES DISTRICT JUDGE

---

[6] Taken in the light most favorable to Petitioner, the petition alleges that Hannye acted on his own behalf and on behalf of Phoenician in pursuing and signing the proposed salvage contract. [*see* DE-3 ¶¶ 7, 11; DE-11-2 (Hannye's signature on proposed contract without mentioning Phoenician)]

9